# EXHIBIT A

Electronically Filed Superior Court of CA County of Contra Costa 5/22/2026 1:39 PM By: C. Padilla, Deputy

JULIE L. FIEBER (SBN 202857)
jfieber@cpmlegal.com
BRIAN DANITZ (SBN 247403)
bdanitz@cpmlegal.com
MATTHEW C. DONAHUE (SBN 325941)
mdonahue@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

GARY A. PRAGLIN (SBN 101256)
gpraglin@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
2716 Ocean Park Blvd., Suite 3088
Santa Monica, California 90405
Telephone: (310) 392-2008
Facsimile: (310) 392-0111

*Attorneys for Plaintiffs Dutch Girl Plaza LLC and Steven H. Depper*

Per local Rule, This case is assigned to Judge Reyes, Benjamin T, II, for all purposes.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF CONTRA COSTA**

**DUTCH GIRL PLAZA LLC**, a California limited liability company; **STEVEN H. DEPPER**, an individual,

Plaintiffs,

v.

**MARATHON PETROLEUM CORPORATION**, a Delaware Corporation; **TESORO REFINING & MARKETING COMPANY LLC**, a Delaware Limited Liability Company; **TESORO ENVIRONMENTAL RESOURCES COMPANY**, a Delaware Corporation; **TESORO SIERRA PROPERTIES, LLC**, a Delaware limited liability company; and **TESORO COMPANIES, INC.**, a Delaware Corporation,

Defendants.

CASE NO: C26-01773

**COMPLAINT:**

1) **Cal. Health & Safety Code Section 78000 *et seq.*;**
2) **Declaratory Relief Under Cal. Health & Safety Code Section 78000 *et seq.*;**
3) **Continuing Trespass;**
4) **Continuing Private Nuisance;**
5) **Continuing Public Nuisance;**
6) **Continuing Negligence; and**
7) **Declaratory Judgment**

**<u>DEMAND FOR JURY TRIAL</u>**

SUMMONS ISSUED





Processed by Court on 6/1/2026 10:09 AM

# TABLE OF CONTENTS

PAGE NO.

**I. INTRODUCTION ........ 1**

**II. THE PARTIES ........ 6**

A. PLAINTIFFS ........ 6

B. DEFENDANTS ........ 6

C. AGENTS, AIDERS, ABETTORS, AND CO-CONSPIRATORS ........ 8

**III. JURISDICTION AND VENUE ........ 8**

**IV. FACTUAL ALLEGATIONS ........ 8**

**V. PRIOR FEDERAL COURT ACTION ........ 15**

**VI. CAUSES OF ACTION ........ 16**

FIRST CAUSE OF ACTION
Recovery of Response Costs and Damages Pursuant to Carpenter-Presley-Tanner Hazardous Substance Account Act (Cal. Health & Safety Code §78000 *et seq.*) ........ 16

SECOND CAUSE OF ACTION
Declaratory Relief Pursuant to Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code §78000 *et seq.* ........ 17

THIRD CAUSE OF ACTION
Continuing Trespass ........ 18

FOURTH CAUSE OF ACTION
Continuing Private Nuisance ........ 19

FIFTH CAUSE OF ACTION
Continuing Public Nuisance ........ 21

SIXTH CAUSE OF ACTION
Continuing Negligence ........ 23

SEVENTH CAUSE OF ACTION
Declaratory Judgment Under State Law ........ 25

**VII. PRAYER FOR RELIEF ........ 26**

**VIII. JURY DEMAND ........ 27**

## I. INTRODUCTION

1. This case concerns a continuous and uncontrolled release of carcinogenic chemicals, specifically petroleum and its byproducts, as well as perchloroethylene (PCE) and trichloroethylene (TCE), which originated from underground storage tanks ("USTs") for vehicle fuels and waste oils on Defendants' property in downtown Walnut Creek. Plaintiff Dutch Girl Plaza LLC ("Dutch Girl") and its member Plaintiff Steven H. Depper (collectively "Plaintiffs") own the adjacent lot at 2094 Mount Diablo Boulevard (the "Property").

2. Dutch Girl has developed and gained approvals to transform its property from the current use, as a "green" eco-friendly dry-cleaning facility, into a mixed-use residential and commercial development, including low-income housing which is desperately needed in Walnut Creek. Those plans, as well as the entire redevelopment of the Walnut Creek downtown area, are now threatened by the continued migration of pollutants from Defendants' property. More important, the health of Plaintiffs' customers, employees, and all people working or living in the vicinity of Defendants' property is threatened by the ongoing carcinogenic release, the result of a botched remediation attempt by Defendants.

***Defendants' Partial Excavation of Contaminated Soil from Leaking USTs, circa 2012***



3. By this action, Plaintiffs seek relief from Defendants' release of hazardous and carcinogenic petroleum and petroleum byproducts, including benzene, naphthalene, ethylbenzene,

and waste oil containing perchloroethylene (PCE), trichloroethylene (TCE), and metals, which have migrated onto the Dutch Girl Property.

4. Plaintiffs seek to recover damages suffered and costs incurred, and continuing to be incurred, in response to contamination migrating onto the Property from Defendants' property located at 2098 Mount Diablo Boulevard, Walnut Creek, California 94956 (the "Site"), which during the relevant time period for this suit was owned and/or operated by Defendants Marathon Petroleum Corporation, Tesoro Refining & Marketing Company LLC, Tesoro Environmental Resources Company, Tesoro Sierra Properties, LLC, and Tesoro Companies, Inc. (collectively, "Defendants"). The following allegations are based upon Plaintiffs' personal knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters.

5. The contamination migrating from the Site onto the Dutch Girl Property poses public safety risks to occupants, employees, and customers of Dutch Girl Cleaners and other businesses operating at the Dutch Girl Property. The underground pollutant plume also threatens to contaminate drinking water aquifers in the area.




***Map Showing Attendant MTBE Vapor Risk Resulting from Prior UST Excavation***

6. Defendants' botched remediation comes not only at the expense of protecting neighbors and the public from toxic chemicals, but Defendants' failure to address this issue is also holding back progress for housing and development in Walnut Creek.

7. Historically, Defendants' gas station and nearby properties, including the Dutch Girl Property, were zoned for commercial use, such as a hardware store or the Dutch Girl dry-cleaning facility. However, on September 4, 2018, Walnut Creek adopted the "West Downtown Specific Plan," re-zoning these properties for mixed residential and commercial use. Property values and related real estate development in the area—on the edge of the downtown district with proximity to a regional transit hub and an interstate highway—escalated rapidly as a result.[1]

***Gas Station at 2098 Mount Diablo Blvd and Neighboring Dutch Girl Property***



8. Recognizing the opportunity created by the rezoning, Dutch Girl's owners worked with consultants to determine the best uses for the Property given the community's needs. Ultimately, Plaintiffs developed plans to transform the Property into a mixed-use residential and commercial plaza ("Dutch Girl Plaza").

9. Presently, Plaintiffs plan to develop Dutch Girl Plaza in accordance with the 2019 "BART Block" plan, a phase of Walnut Creek's West Downtown Specific Plan which takes into account the Property's prime location near the Walnut Creek BART station as well as proximity to Interstate 680.[2]

---

[1] City of Walnut Creek, *West Downtown Specific Plan*, Sept. 4, 2018, https://www.walnut-creek.org/home/showdocument?id=20257 (last accessed Dec. 15, 2024).

[2] *Id.*

10. Dutch Girl's redevelopment plan creates seventy-five residential units, including a low-income component with a ground level daycare, retail, and underground parking to meet downtown Walnut Creek's growing commercial and residential needs, while complying with state-mandated affordable housing needs.[3]




***Source: Figure 3-1, Land Use Map, West Walnut Creek Downtown Specific Plan***[4]

11. Unfortunately, contamination at Defendants' gas station may prevent future development of the Dutch Girl Property. Inevitably, contamination that has migrated from Defendants' property onto Plaintiffs' Property will be exposed during construction, creating a toxic hazard for both workers and for the future residents of the Property.

12. Defendants' failure to appropriately remediate and remove that contamination holds back progress for development of the Dutch Girl Property as well as the entire West Downtown

[3] Andrew Nelson, *Housing Proposed at 2094 Mount Diablo Boulevard, Walnut Creek*, SF YIMBY (Aug. 18, 2024), https://sfyimby.com/2024/08/housing-proposed-at-2094-mount-diablo-boulevard-walnut-creek.html (last accessed Dec. 16, 2024).
[4] West Downtown Specific Plan, *supra* note 1, at 3-5.

Walnut Creek commercial corridor. Defendants' property contamination will likely delay—if not entirely prevent—active re-development projects while continuing to harm the community with exposure to toxic chemicals.[5]

13. Administrative action has been ineffective. Since 2015, the San Francisco Bay Regional Water Quality Control Board ("Regional Board") has refused to hear petitions from Plaintiffs regarding closure of the Site. Instead, the Regional Board has recently moved forward with closing its investigation of Defendants' Site, despite ongoing testing showing the continued presence of, *inter alia*, benzene, naphthalene, ethylbenzene, waste oil, PCE, TCE, and metals.

14. The contamination underlying the Site remains a human health threat. The same discharges and vapors detected on the Site are also underneath the Dutch Girl Property. The contamination still pollutes adjacent groundwater, including the nearby Murderer's Creek. Vapor from the contaminated soil continues to accumulate underneath and seep into buildings on the Dutch Girl Property.

15. The residual contamination increases community exposure to toxic gases and is a threat to the safety of the community on Mount Diablo Boulevard, a major thoroughfare through Walnut Creek lined with schools, businesses, and homes.




***Map Showing Extent of Toxic Plume Originating from the Site.***

[5] *See* West Downtown Specific Plan, *supra* note 1.

# II. THE PARTIES

## A. PLAINTIFFS

16. Plaintiff Dutch Girl Plaza LLC ("Dutch Girl") is a California limited liability company based in Walnut Creek, California.

17. Plaintiff Steven H. Depper ("Depper" and, collectively with Dutch Girl, "Plaintiffs") is a member of Dutch Girl and a trustee of the 2013 Depper Family Living Trust, through which he owned the Dutch Girl Property. He is a resident of Contra Costa County, California.

18. On October 25, 2024, Steven H. Depper formed Dutch Girl Plaza LLC and subsequently transferred title of the Dutch Girl Property to Dutch Girl Plaza LLC.

## B. DEFENDANTS

19. Upon information and belief, Defendant Marathon Petroleum Corporation ("Marathon") is a Delaware Corporation, with its headquarters in Findlay, Ohio. Marathon engages in the business of petroleum refining, marketing, and transportation throughout the United States.

20. Upon information and belief, on or about October 1, 2018, Marathon acquired Tesoro Corporation, a now defunct San Antonio, Texas based holding company—briefly known as "Andeavor"—which prior to its acquisition by Marathon, wholly held subsidiaries including, but not limited to, Tesoro Refining & Marketing Company LLC, Tesoro Environmental Resources Company, Tesoro Sierra Properties, LLC, and Tesoro Companies, Inc. Plaintiffs are informed and believe that Marathon acquired Tesoro Corporation's and its subsidiaries' environmental liabilities.

21. Upon information and belief, Defendant Tesoro Refining & Marketing Company LLC ("Tesoro Refining") is a Delaware limited liability company, with its headquarters in Findlay, Ohio. Tesoro Refining refines and stores crude oil in Anacortes, Washington, and operates gasoline blending facilities, together with all related equipment, pipeline interconnections, laboratories, and ancillary facilities throughout the United States. Plaintiffs are informed and believe that Tesoro Refining is a wholly owned subsidiary of Marathon.

22. Upon information and belief, Defendant Tesoro Environmental Resources Company ("Tesoro Resources") is a Delaware Corporation, with its headquarters in San Antonio, Texas. Plaintiff is informed and believes that Tesoro Resources is a wholly owned subsidiary of Marathon.

23. Upon information and belief, Defendant Tesoro Sierra Properties, LLC ("Tesoro Sierra") is a Delaware limited liability company with its headquarters in San Antonio, Texas. Plaintiffs are informed and believe that Tesoro Sierra is a wholly owned subsidiary of Marathon. Plaintiffs are informed and believe that Tesoro Sierra was created in or about March 2007 for the sole purpose of acquiring title to the Site.

24. Upon information and belief, Tesoro Companies, Inc. ("Tesoro Companies"), is a Delaware Corporation, with its headquarters in San Antonio, Texas. Plaintiffs are informed and believe that Tesoro Companies is a holding company of subsidiaries responsible for business operations at the Site during the relevant time period for this suit. Plaintiffs are further informed and believe that Tesoro Companies is a wholly owned subsidiary of Marathon.

25. Marathon, collectively with, Tesoro Refining, Tesoro Resources, Tesoro Sierra, and Tesoro Companies, are hereinafter referred to as "Defendants."

26. Plaintiffs are informed and believe that during the relevant time period for this suit, Defendants owned and/or operated a presently branded "Speedway Express" gasoline service station at the Site and, to this day, Defendants retain liability for environmental liabilities arising from those operations. Upon information and belief, Defendants also retain ownership of the Site.

27. Plaintiffs are informed and believe and thereupon allege that each of the named Defendants, directly and/or through predecessors-in-interest or parent companies, has owned and/or conducted operations at the gas station adjacent to the Dutch Girl Property from which hazardous substances have been released, causing soil, vapor, and/or groundwater contamination at the Dutch Girl Property.[6]

---

[6] On May 14, 2021, Seven & i Holdings, Co., Ltd., the Japanese parent company of retail and convenience giant 7-Eleven, Inc., acquired all "Speedway" and "Speedway Express" branded gas stations (and associated mini-marts) in the United States, and therefore, Plaintiffs are informed and believe that Seven & i Holdings, Co., Ltd. currently operates the gas station located at the Site. However, at this time, upon information and belief, Plaintiffs are unaware of any facts suggesting that Seven & i Holdings, Co., Ltd. acquired ownership of the land at the Site or of associated environmental liabilities. Plaintiffs will timely move to amend this complaint if discovery shows this to be incorrect.

**C. AGENTS, AIDERS, ABETTORS, AND CO-CONSPIRATORS**

28. At all times herein mentioned, Defendants, and each of them, were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other Defendants named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture, and each Defendant has ratified and approved the acts of each of the remaining Defendants. Each of the Defendants aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein.

29. In taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, as alleged herein, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## III. <u>JURISDICTION AND VENUE</u>

30. Subject matter jurisdiction exists because this Court is a court of general jurisdiction and the amount in controversy exceeded the jurisdictional minimum of this Court.

31. The Court has personal jurisdiction over all parties to this action because all parties are either domiciled in or have sufficient minimum contacts with the State of California which arise out of or related to the claims alleged herein such that the exercise of jurisdiction comports with the traditional notions of fair play and substantial justice.

32. Venue is proper in the County of Contra Costa pursuant to California Code of Civil Procedure §395 because all of the events, acts, omissions, and/or transactions complained of herein occurred in/or originated from Contra Costa County, State of California.

## IV. <u>FACTUAL ALLEGATIONS</u>

33. Dutch Girl Cleaners is a family-owned business that has been serving the Walnut Creek area for over four decades. In 2000, Depper acquired the property at 2094 Mount Diablo Boulevard, Walnut Creek, California 94956 and operated the property as Dutch Girl Cleaners' new facility. The property has since been transferred to Dutch Girl.

34. Before Depper purchased the Dutch Girl Property, on or about December 15, 1999,

a Phase I Site Assessment was conducted for the seller, Gary Schumm, by the Denali Group. The Phase I Assessment found no environmental conditions of concern and did not recommend any further environmental investigation activities at the Dutch Girl Property. The Dutch Girl Property was subsequently developed as a location for Plaintiffs' business and various retail tenants. The Dutch Girl Property is currently occupied by Dutch Girl Cleaners and an Ace Hardware office.

35. According to a removal report prepared for the Kayo Oil Group in 1987 by Alpha Geotechnical Consultants, Inc., a leaking underground storage tank containing waste oil was removed on or about October 2, 1987, from the Site by Conoco, Inc., when the station was operated as an "Econo" gas station. The removal report identified oil, grease, and diesel contamination in the soil. Shortly thereafter, an unauthorized release of gasoline was also discovered at the Site.

36. Plaintiffs are informed and believe that after the contamination was discovered in 1987, Ultramar, Inc. ("Ultramar") acquired the Site, and operated the Site as a "Beacon" service station. At Ultramar's direction, Delta Environmental Consultants, Inc. collected soil samples and investigated the 1987 release for nearly a decade under the oversight of the San Francisco Regional Water Quality Control Board. On June 11, 1997, the Regional Board closed its investigation of the 1987 tank removal.

37. Plaintiffs are informed and believe that when Plaintiffs first acquired ownership of the Dutch Girl Property in or about the year 2000, contamination at the neighboring Site remained present at levels equal to or greater than described in the Regional Board's 1997 closure report.

38. Since then, Plaintiffs have submitted multiple petitions to the Regional Board's members and Chief Counsel regarding the closing of the Site investigation. In these petitions, Plaintiffs alleged that residual contaminated soil from the removal process remained on the Site, and the contaminated soil became—and remains—a source for soil and groundwater contamination beneath the Dutch Girl Property.

39. Plaintiffs' petitions and communications to the Regional Board allege that the contamination beneath the Dutch Girl Property is extensive both laterally and vertically. The Regional Board has ignored these facts in its attempts to close subsequent, ongoing investigations of the Site.

40. In or about January 2004, Arctos Environmental ("Arctos"), at the direction of Tesoro Companies, conducted a Phase II environmental investigation that included six soil borings on the Site. Three of the borings were converted to groundwater monitoring wells, and sampling results showed that groundwater beneath the Site was still impacted by petroleum hydrocarbons from unauthorized releases from the previous leaking USTs. Arctos found that chemicals of concern in soil and groundwater included total petroleum hydrocarbons as gasoline ("TPHg"), benzene, toluene, ethylbenzene, total xylenes ("BTEX compounds"), and methyl tert-butyl ether ("MTBE").

41. In or about October 2004, the Regional Board determined that the groundwater at the Site was contaminated with petroleum byproducts, including benzene, diesel, and TPH. Dissolved benzene in groundwater was identified at 4,300 parts per billion ("ppb") and dissolved MTBE was identified at 2,400 ppb.

42. Following the 2004 discovery, the Regional Board ordered Tesoro Companies to conduct further investigation, led by Arctos, to determine the lateral and vertical extent of the contamination. To this day, the actual scope and nature of the soil and groundwater contamination remains undefined while the toxic health hazards from these chemical wastes persist. Upon information and belief, later testing has also detected perchloroethylene (PCE), trichloroethylene (TCE), vinyl chloride, and related chlorinated-solvent compounds — all CERCLA-listed hazardous substances not subject to the petroleum exclusion —in soil gas and groundwater on and emanating from the Site and migrating onto the Dutch Girl Property. Plaintiffs have incurred and will continue to incur necessary investigation and response costs consistent with the National Contingency Plan to address this chlorinated-solvent release associated with Defendants' historical activities at the Site.

43. In or about 2007, Defendants requested, and Plaintiffs agreed to allow the installation of groundwater monitoring wells on the Dutch Girl Property. At that time, Plaintiffs first learned that the contamination from Defendants' property had migrated under Plaintiffs' own property, including into the groundwater. The Regional Board has determined that the presence of benzene and TPH in the groundwater under the Dutch Girl Property is attributable to the Site.




***Groundwater Monitoring Well on the Dutch Girl Property***

44. On September 20, 2007, Depper entered into a Right of Entry Agreement for Boring and Well Installation at the Dutch Girl Property (the "2007 Right of Entry Agreement") with Tesoro Resources. The purpose of the 2007 Right of Entry Agreement was for Tesoro Resources to install groundwater monitoring wells to monitor, maintain, sample, and collect water samples at the Dutch Girl Property to determine the scope of the contamination and perform required remediation. The 2007 Right of Entry Agreement provided, in pertinent part, as follows:

> Tesoro [Resources] agrees to indemnify, defend and hold you and your heirs, successors, assigns, spouse, children, and partners harmless from and against all liabilities, losses, claims, demands, orders, causes of action, damages, costs or expenses arising out of or relating to (a) Tesoro's activities on the Property

> including the installation and sampling of the soil borings and monitoring well at the Property (b) any groundwater contamination migrating onto the Property from the Tesoro Property, and (c) any PETROLEUM soil or groundwater contamination WHICH DID NOT ORIGINATE ON THE PROPERTY…found as a result of the investigation.

45. At the same time it executed the 2007 Right of Entry Agreement, Tesoro Resources sent Depper a letter stating, in pertinent part, as follows:

> Tesoro Environmental Resources Company (Tesoro) retains environmental responsibility for soil and groundwater cleanup at the retail gasoline service station located at 2098 Mt. Diablo Boulevard (the Site), adjacent to your property located at 2094 Mt. Diablo Boulevard, California (the Property). Tesoro appreciates your cooperation in completing the Right of Entry Agreement for the referenced Property, attached hereto. The business interruption compensation for this Access Agreement has been forwarded to you under separate cover.

46. Subsequently, Depper entered into two additional Right of Entry Agreements with Tesoro Resources, one in or about October 2008, and another in or about September 2016. Both allowed Tesoro Resources access to the Dutch Girl Property to conduct the necessary investigation and remediation. The 2008 and 2016 Right of Entry Agreements also contain indemnity provisions almost identical to the one quoted above from the 2007 Right of Entry Agreement.

47. On or about June 16, 2010, Tesoro sent a letter to Depper admitting responsibility for the groundwater contamination at the Dutch Girl Property. That letter states, in pertinent part, as follows:

> The purpose of this letter is to affirm Tesoro Environmental Resources Company's (Tesoro's) commitment to remediate current soil and groundwater impacts at the commercial establishment known as Dutch Girl Cleaners located at 2094 Mt. Diablo Blvd., Walnut Creek, CA 94596 (the 'Property').

48. Upon information and belief, on or about November 2012, Tesoro Resources again retained Arctos to remediate gasoline-impacted soil and groundwater on the Site during routine gas station improvement activities and to excavate further unsaturated and saturated soil encountered during the removal of former USTs and dispensers.

49. Plaintiffs are informed and believe that subsequent excavations in 2012 to remove USTs and extract contaminated soil failed to fully remediate the contamination, which has come into direct contact with shallow groundwater beneath the Site and is migrating onto the Dutch Girl Property.

50. In or about 2017, the Regional Board took steps to close the 2012 UST removal investigation, despite information Dutch Girl provided, including a detailed presentation on the ongoing health risks from continued contamination of the Site and the Dutch Girl Property.

51. On June 26, 2019, Defendant Tesoro Refining & Marketing Company LLC entered into an Indemnity Agreement, with Bank of the West as Indemnitee, related to a loan for the Property, *i.e.*, the land parcel at 2094 Mount Diablo Boulevard. In the Recitals to the Indemnity Agreement, Tesoro Refining states that having sold the Site, *i.e.*, the property at 2098 Mount Diablo Blvd., Walnut Creek, CA 94496, to USA Petroleum in December 2002, it still retained liability for petroleum releases at the property occurring prior to the sale. It further recited that in 2007, Tesoro Sierra, a wholly owned subsidiary, acquired the Site. Tesoro Refining further acknowledged in the Recitals that it has accepted responsibility under State of California laws and regulations for the investigation and remediation of the historic petroleum impacts associated with the Site, and that it shall remain the responsible party for work being done under the San Francisco Bay Regional Board file No. 07-0337 until a no further action or equivalent case closure status is granted. Tesoro Refining further agreed to "indemnify and hold indemnitee harmless from all liability, costs and expenses" associated with that work until case closure.

52. Plaintiffs are informed and believe that Defendants' remediation efforts left in place soil contamination, including benzene, TPH, perchloroethylene (PCE), trichloroethylene (TCE), and metals, all well above regulatory action levels.

53. Upon information and belief, Plaintiffs allege that on or about February 26, 2023, Proposition 65 chemicals originating from the Site were discovered in concentrations in the indoor air of the Dutch Girl building and were determined to pose human health risks by inhalation to workers and tenants via vapor intrusion indoors.

54. To date, Dutch Girl continues to advocate to the Regional Board that this finding is but one more indication that the Site is contaminated, the June 24, 2024, case closure was made in error, and the Site still poses further specific health risks to the wider community.

55. Despite Defendants' repeated assurances for over a decade that they would address the contamination at the Dutch Girl Property, the contamination remains to this day. Defendants

have failed to take adequate and effective steps to address it, instead repeatedly delaying remediation efforts. At all times relevant herein, Defendants, and each of them, concealed and omitted relevant facts that would have allowed Plaintiffs to discover the true nature and degree of the soil and groundwater contamination issues, and that Defendants did not intend to fully remediate those issues.

56. For example, through the series of agreements described above, including the June 26, 2019, indemnity agreement, Defendants repeatedly represented that they accepted responsibility for investigation and remediation of the contamination at the Site until such a time as the San Francisco Bay Regional Board issued a case closure for the Site. Plaintiffs were aware of these promises and relied upon them in refraining from bringing legal action directly against Defendants outside of Plaintiffs' participation in the San Francisco Bay Regional Board proceedings. Those proceedings continued until case closure on June 24, 2024. However, contrary to their promise, Defendants have not remediated the contamination. Therefore, after the Board issued the case closure, Plaintiffs timely filed this suit. As a result of their prior representations that they accepted responsibility for the remediation, Defendants are equitably estopped from now invoking the statute of limitations as a defense to this action.

57. As a result of the above misrepresentations and omissions, equitable tolling of the statute of limitations applies as to the claims asserted by Plaintiffs. Any applicable statute of limitations that might otherwise bar Plaintiffs' federal statutory and state common law claims should be tolled because Defendants, and each of them, actively misled Plaintiffs through affirmative representations and omissions with respect to their intent to remediate the contamination, as well as the true nature, quality, hazards of the contamination, and incomplete and inadequate remediation attempts as described herein and above.

58. Plaintiffs exercised due diligence to discover Defendants' wrongdoings. However, such wrongdoing and/or the full extent and degree of such wrongdoing was not reasonably discoverable prior to the date of the filing of this action and/or prior to the statutory period for the filing of this action. Because Defendants, and each of them, concealed their wrongdoing through misrepresentations and omissions, Plaintiffs exercised due diligence by promptly filing this

Complaint after discovering the facts giving rise to these claims.

59. During this time, each of the Defendants was or should have been aware of the contamination at the Site, and knew or should have known that the contamination was migrating towards the Dutch Girl Property, which was less than one hundred feet from the Site. Defendants knew or should have known that the contamination posed a threat to the health and safety of occupants, employees, and visitors to the Dutch Girl Property and threatened the health and safety of the community.

60. Defendants have a statutory obligation to remediate the contamination and prevent it from migrating from the Site. To date, Defendants have failed to clean up the contamination at the Site and to prevent the migration of contamination onto the Dutch Girl Property.

61. As a result, Plaintiffs have incurred, and continue to incur, substantial costs because the contamination caused by releases from the Site has been migrating and continues to migrate onto the Dutch Girl Property and threatens substantial harm to the Dutch Girl Property, delays Plaintiffs' and the surrounding community's re-development plans, and continues to pose potential risks to Dutch Girl's employees and customers which must be addressed now.

## V. <u>PRIOR FEDERAL COURT ACTION</u>

62. Since at least 2007 when Plaintiffs learned that contamination under the Site had migrated to Plaintiffs' Property, Defendants have had notice of Plaintiffs' claim that Defendants are responsible for the investigation and remediation of the contamination at the Site and underneath Plaintiffs' Property. In the years since, while working through the legal process provided by the San Francisco Bay Regional Board, both Plaintiffs and Defendants have vigorously debated Defendants' obligations with respect to the investigation and remediation, and Defendants' compliance with those obligations. Plaintiffs acted reasonably and in good faith in using the procedures and forum provided by the San Francisco Bay Regional Board to try to resolve these disputes, instead of proceeding directly to litigation. However, once the Board issued its case closure on June 24, 2024, it became evident that Plaintiffs would need to pursue civil litigation.

63. On February 10, 2025, Plaintiffs timely filed suit in the Northern District of California alleging jurisdiction based upon both the inclusion of claims under CERCLA and

diversity. Defendants moved to dismiss, which motion was granted in part and denied in part. The district court found that Plaintiffs had stated claims for continuing trespass and nuisance but found the statutory and negligence claims time-barred and dismissed those claims with leave to amend. Plaintiffs then filed their First Amended Complaint in the district court, and Defendants again moved to dismiss the statutory and negligence claims. On May 12, 2026, the district court judge dismissed Plaintiffs' CERCLA claims as time-barred and, without addressing the state law claims, found no further basis for federal court jurisdiction. It then dismissed the entire case. Thereafter, Plaintiffs timely refiled the present action in the Superior Court for Contra Costa County.

64. Through the Board proceeding and the district court case, the parties have had the opportunity to develop a detailed factual record and preserve relevant evidence which will likely expedite resolution of this civil action. Plaintiffs have also provided substantive written discovery responses and document productions in the district court action. As a result, Defendants suffered no prejudice from the delay, and Plaintiffs' claims have been equitably tolled during the pendency of the Board proceeding and the federal court case.

## VI. <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>
**Recovery of Response Costs and Damages Pursuant to Carpenter-Presley-Tanner Hazardous Substance Account Act (Cal. Health & Safety Code §78000 *et seq.*)**
**(On Behalf of Plaintiffs Against All Defendants)**

65. Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

66. Plaintiffs are a "person" as defined in the Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA") (Cal. Health & Safety Code § 78085). Plaintiffs have incurred and/or will continue to incur substantial response costs to investigate the nature and scope of the VOC contamination and remediate VOC contamination migrating from the Site to the Dutch Girl Property. All such response costs have been necessary and consistent with the National Contingency Plan ("NCP").

67. Defendants are "responsible parties" within the meaning of California Health and Safety Code § 78145.

68. The HSAA imposes liability on any "responsible party" who is the owner or operator of a facility or was the owner or operator of any facility at which such hazardous substances were disposed of, arranged for the disposal of hazardous substances, or arranged with a transporter for transport of disposal of hazardous substances owned or possessed by such persons for the response costs incurred.

69. Defendants' disposal of hazardous substances at the Site constitutes a release or threatened release of hazardous substances at a facility within the meaning of the Carpenter-Presley-Tanner Hazardous Substances Act.

70. As a direct and proximate result of the releases or threatened releases of hazardous substances from Site, Plaintiffs have incurred and will continue to incur response costs consistent with the NCP.

71. As a direct and proximate result of Defendants' conduct, Plaintiffs are entitled to recover past, present, and future response costs together with interest from Defendants pursuant to California Health and Safety Code § 79670.

## SECOND CAUSE OF ACTION

**Declaratory Relief Pursuant to Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code §78000 *et seq.***
**(On Behalf of Plaintiffs Against All Defendants)**

72. Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

73. An actual controversy exists between Plaintiffs and Defendants regarding their respective rights and obligations concerning necessary response costs under California Health and Safety Code § 79670.

74. Plaintiffs assert that Defendants, as the current owners and/or operators of the Site, or as entities contractually liable, are responsible for all necessary response costs incurred in connection with the investigation, testing, removal, and other remediation or monitoring of the hazardous substances on the Dutch Girl Property.

75. Plaintiffs desire a judicial determination that Defendants are strictly liable to Plaintiffs for all such necessary costs.

76. Such a declaration is necessary and appropriate at this time, although due to the continuing nature of Defendants' releases, Plaintiffs anticipate they will likely incur future response costs and will likely be required to undertake future response actions necessitated by Defendants' releases for which Defendants should be strictly liable.

**THIRD CAUSE OF ACTION**
**Continuing Trespass**
**(On Behalf of Plaintiffs Against All Defendants)**

77. Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

78. Plaintiffs are informed and believe and based thereon allege that at all material times, Defendants allowed and permitted, and continue to allow and permit, hazardous substances and other contaminants located on the Site to migrate into the soil and groundwater under the Dutch Girl Property. Defendants have no lawful right, authority or consent to dispose or cause the disposal of hazardous substances, including the disposal of VOC contamination, onto the Dutch Girl Property.

79. Defendants by their wrongful disposal of pollutants onto the Dutch Girl Property and their intentional and reckless failure to clean up the contamination have unlawfully interfered and continue to interfere with Plaintiffs' exercise of their rights to use and enjoyment of the Dutch Girl Property.

80. The trespass caused by the migration of the VOC contamination from the Site to the Dutch Girl Property can be abated at a reasonable cost.

81. As an actual and proximate result of Defendants' intentional and unlawful trespass, Plaintiffs have incurred costs and suffered damages, and will continue to incur costs and suffer damages, until the investigations and cleanup of the Dutch Girl Property are complete and until Defendants clean up the contamination existing at the Site and migrating from the Site.

82. Plaintiffs are informed and believe that Defendants knew about the contamination at the Site; knew that the contamination was spreading to adjacent properties, including the Dutch Girl Property, which is downslope and less than 100 hundred feet away; knew that the contamination consisted of VOCs that are known carcinogens; and knew or should have known that occupants, employees, and visitors of the Dutch Girl Property could potentially be exposed to contaminants

discharged, emanating, or flowing from the Site.

83. Despite knowing all this for many years, Defendants delayed and avoided cleanup or abatement of contamination at the Site. Defendants took these actions with malice and a willful and knowing disregard of the rights and safety of Plaintiffs and the community. Plaintiffs should, therefore, be awarded punitive and exemplary damages under Civil Code § 3294 sufficient to punish Defendants for engaging in the conduct and to deter similar conduct in the future.

84. In addition, Plaintiffs should be awarded attorney's fees under Code of Civil Procedure § 1021.5 because the successful prosecution of this action will confer a significant benefit both pecuniary and nonpecuniary on the general public and a large class of persons by abating environmental harm and preventing future harm in Walnut Creek. Further, the necessity and financial burden of private enforcement make such an award appropriate as the litigation is not economically feasible or viable for Plaintiffs to pursue on their own at their own expense, and such fees should not in the interest of justice be paid out of the recovery, if any.

## FOURTH CAUSE OF ACTION
**Continuing Private Nuisance**
**(On Behalf of Plaintiffs Against All Defendants)**

85. Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

86. Plaintiffs are informed and believe that at all material times, Defendants intentionally and recklessly allowed and permitted, and continue to allow and permit, hazardous substances and other contaminants, including petroleum, located on the Site to migrate into the soil and groundwater on the Dutch Girl Property.

87. The VOC contamination migrating from the Site to the Dutch Girl Property constitutes a continuing nuisance. The VOC contamination has interfered, and continues to interfere, with Plaintiffs' use and enjoyment of the Dutch Girl Property.

88. The continuing nuisance caused by the migration of the VOC contamination from the Site to the Dutch Girl Property can be abated at a reasonable cost.

89. As an actual and proximate result of the continuing nuisance created by Defendants, Plaintiffs have incurred costs and suffered damages, and will continue to incur costs and suffer

damages, until the investigation and cleanup of the Dutch Girl Property is complete.

90. Plaintiffs are informed and believe that Defendants knew about the contamination at the Site; knew that the contamination was spreading to adjacent properties, including the Dutch Girl Property, which is downslope and less than one hundred feet away; knew that the contamination consisted of VOCs that are known carcinogens; and knew or should have known that occupants, employees, and visitors of the Dutch Girl Property could potentially be exposed to contaminants discharged, emanating, or flowing from the Site.

91. Despite knowing all this for many years, Defendants delayed and avoided cleanup or abatement of contamination at the Site. Defendants took these actions with malice and a willful and knowing disregard of the rights and safety of Plaintiffs and the community. Plaintiffs should, therefore, be awarded punitive and exemplary damages under Civil Code § 3294 sufficient to punish Defendants for engaging in the conduct and to deter similar conduct in the future.

92. Defendants have wrongfully and unlawfully permitted hazardous substances and other contaminants to be released onto the Site, which subsequently migrated and continue to migrate onto the Dutch Girl Property and into the Dutch Girl Property's underlying groundwater.

93. Plaintiffs hereby demand that Defendants stop delaying the remediation of hazardous substances and other contaminants on the Site and stop allowing the hazardous substances and other contaminants contained thereon to be released onto the Dutch Girl Property and into the Dutch Girl Property's underlying groundwater.

94. Defendants' wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable harm to Plaintiffs. As long as hazardous substances and other contaminants remain on the Site they will continue to migrate to Plaintiffs' property, and Plaintiffs' employees, customers, and tenants will remain at risk of exposure to the hazardous substances and other contaminants.

95. Plaintiffs have no speedy, plain, or adequate remedy at law for the injuries presently being suffered or for the aggregation of such injuries. Unless the nuisance created by Defendants is restrained by a preliminary or permanent injunction, Plaintiffs will suffer great and irreparable injury in that the hazardous substances and other contaminants will continue to migrate onto Plaintiffs'

Property and continue to damage that property if not enjoined.

96. In addition, Plaintiffs should be awarded attorney's fees under Code of Civil Procedure § 1021.5 because the successful prosecution of this action will confer a significant benefit both pecuniary and nonpecuniary on the general public and a large class of persons by abating environmental harm and preventing future harm in Walnut Creek. Further, the necessity and financial burden of private enforcement make such an award appropriate as the litigation is not economically feasible or viable for Plaintiffs to pursue on their own at their own expense, and such fees should not in the interest of justice be paid out of the recovery, if any.

**FIFTH CAUSE OF ACTION**
**Continuing Public Nuisance**
**(On Behalf of Plaintiffs Against All Defendants)**

97. Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

98. Groundwater within the State of California, including the groundwater underlying the Dutch Girl Property and the Site, constitutes "waters of the state" pursuant to California Water Code §13050(e).

99. As stated in California Water Code § 13000, the California Legislature has declared that "the people of the state have a primary interest in the conservation, control and utilization of water resources of the state, and that the quality of all waters of the state shall be protected for use and enjoyment by the people of the state."

100. Plaintiffs are informed and believe that at all relevant times, Defendants allowed and permitted, and continue to allow and permit, hazardous substances and other contaminants that had been released onto the Site to migrate into the soil and groundwater on, adjacent to and underlying the Dutch Girl Property and into the waters of the State of California.

101. The hazardous substances and contaminants are carcinogens, reproductive toxins, and/or are otherwise highly toxic to plant and animal life, and their release into the soil and groundwater constitutes a public nuisance within the meaning of California Civil Code §§ 3479 and 3480. The hazardous substances and contaminants have migrated, and are continuing to migrate, into the waters of the state and the environment and are damaging the public natural resources of the

State of California.

102. While this public nuisance affects a considerable number of persons, it has caused special injury to Plaintiffs because the hazardous substances and contaminants that Defendants released and allowed to migrate, continue to migrate primarily to the soil and groundwater on and underlying the Dutch Girl Property.

103. Plaintiffs are informed and believe and based thereon allege that the contamination caused by the nuisance can be abated at a reasonable cost.

104. As a direct and proximate result of the continuing nuisance maintained by Defendants, Plaintiffs have incurred costs and suffered damages in remediating the environmental conditions at the Dutch Girl Property and will continue to incur costs and suffer damages until the environmental condition of the Dutch Girl Property has been fully remediated and the migration of hazardous substances and other contaminants from the Site to the Dutch Girl Property has ceased.

105. Plaintiffs are therefore entitled to an award of damages according to proof at trial and an order requiring Defendants to abate the nuisance in accordance with all applicable laws, regulations and orders.

106. Plaintiffs are informed and believe that Defendants knew about the contamination at the Site; knew that the contamination was spreading to adjacent properties, which including the Dutch Girl Property, which is downslope and less than 100 hundred feet away; knew that the contamination consisted of VOCs that are known carcinogens; and knew or should have known that occupants, employees, and visitors of the Dutch Girl Property could potentially be exposed to contaminants discharged, emanating, or flowing from the Site.

107. Despite knowing all this for many years, Defendants delayed and avoided cleanup of the contamination at the Site. Defendants took these actions with malice and a willful and knowing disregard of the rights and safety of Plaintiffs and the community. Plaintiffs should, therefore, be awarded punitive and exemplary damages under Civil Code § 3294 sufficient to punish Defendants for engaging in the conduct and to deter similar conduct in the future.

108. Defendants have wrongfully and unlawfully permitted hazardous substances and other contaminants to be released onto the Site, which subsequently migrated and continue to

migrate onto the Dutch Girl Property and into the Dutch Girl Property's underlying groundwater.

109. Plaintiffs hereby demand that Defendants stop delaying the remediation of hazardous substances and other contaminants on the Site and stop allowing the hazardous substances and other contaminants contained thereon to be released onto the Dutch Girl Property and into the Dutch Girl Property's underlying groundwater.

110. Defendants' wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable harm to Plaintiffs. As long as hazardous substances and other contaminants remain on the Site they will continue to migrate to Plaintiffs' property, and Plaintiffs' employees, customers, and tenants will remain at risk of exposure to the hazardous substances and other contaminants.

111. Plaintiffs have no speedy, plain, or adequate remedy at law for the injuries presently being suffered or for the aggregation of such injuries. Unless the nuisance created by Defendants is restrained by a preliminary or permanent injunction, Plaintiffs will suffer great and irreparable injury in that the hazardous substances and other contaminants will continue to migrate onto Plaintiffs' Property and continue to damage that property if not enjoined.

112. In addition, Plaintiffs should be awarded attorney's fees under Code of Civil Procedure § 1021.5 because the successful prosecution of this action will confer a significant benefit both pecuniary and nonpecuniary on the general public and a large class of persons by abating environmental harm and preventing future harm in Walnut Creek. Further, the necessity and financial burden of private enforcement makes such an award appropriate as the litigation is not economically feasible or viable for Plaintiffs to pursue on their own at their own expense, and such fees should not in the interest of justice be paid out of the recovery, if any.

## SIXTH CAUSE OF ACTION
**Continuing Negligence**
**(On Behalf of Plaintiffs Against All Defendants)**

113. Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

114. Defendants owe Plaintiffs a continuing duty to prevent the hazardous substances situated on the Site from migrating onto and contaminating the Dutch Girl Property in a manner that

causes Plaintiffs to sustain damages and losses.

115. Defendants breached their duty to Plaintiffs, and continue to breach their duty to Plaintiffs, by negligently owning, maintaining, controlling, managing, and operating the Site so as to cause the hazardous substances situated on the Site to migrate onto and contaminate the Dutch Girl Property, and by intentionally and recklessly failing to timely clean up the contamination.

116. Defendants, by failing to exercise reasonable care in the conduct of the ownership and operation of the Site, and by their continuing failure to exercise reasonable care to abate the hazardous and dangerous conditions at that property, proximately caused and will continue to cause Plaintiffs to investigate, identify, and remove the hazardous substances and other contaminants at the Dutch Girl Property and to incur significant response costs in undertaking each of these activities, unless and until the contamination is cleaned up.

117. Plaintiffs have been damaged by being forced to incur significant response costs in response to Defendants' negligence in an amount yet unknown, for which Plaintiffs make claim according to proof at trial.

118. The damages and losses sustained by Plaintiffs were caused solely by Defendants' negligence, without any fault of Plaintiffs contributing thereto. Therefore, Plaintiffs are entitled to recover from Defendants the full amount of their damages.

119. Plaintiffs are informed and believe that Defendants knew about the contamination at the Site; knew that the contamination was spreading to adjacent properties, which including the Dutch Girl Property, which is downslope and less than 100 hundred feet away; knew that the contamination consisted of VOCs that are known carcinogens; and knew or should have known that occupants, employees, and visitors of the Dutch Girl Property could potentially be exposed to contaminants discharged, emanating, or flowing from the Site.

120. Despite knowing all this for many years, Defendants delayed and avoided cleanup of the contamination at the Site. Defendants took these actions with malice and a willful and knowing disregard of the rights and safety of Plaintiffs and the community. Plaintiffs should, therefore, be awarded punitive and exemplary damages under Civil Code § 3294 sufficient to punish Defendants for engaging in the conduct and to deter similar conduct in the future.

121. In addition, Plaintiffs should be awarded attorney's fees under Code of Civil Procedure § 1021.5 because the successful prosecution of this action will confer a significant benefit both pecuniary and nonpecuniary on the general public and a large class of persons by abating environmental harm and preventing future harm in Walnut Creek. Further, the necessity and financial burden of private enforcement makes such an award appropriate as the litigation is not economically feasible or viable for Plaintiffs to pursue on their own at their own expense, and such fees should not in the interest of justice be paid out of the recovery, if any.

**SEVENTH CAUSE OF ACTION**
**Declaratory Judgment Under State Law**
**(On Behalf of Plaintiffs Against All Defendants)**

122. Plaintiffs repeat and reallege all allegations set forth above as if they were fully set forth herein.

123. Plaintiffs are informed and believe that an actual controversy has arisen and now exists between Plaintiffs and Defendants in that Plaintiffs contend and, upon information and belief, Defendants deny, that responsibility for the hazardous substances and other contaminants caused or permitted to come onto the Dutch Girl Property rests solely and entirely upon Defendants.

124. Plaintiffs have incurred and will continue to incur necessary response costs, including, but not limited to, investigatory expenses, attorneys' fees, and interest in remediating the Dutch Girl Property.

125. Plaintiffs seek a declaration of the rights and obligations of the parties, binding in any subsequent action or actions to recover necessary response costs and other damages incurred and to be incurred by Plaintiffs in connection with the releases, threatened releases, spills, disposals, discharges of hazardous substances, and other contaminants that have and will pollute the Dutch Girl Property in the manner previously referenced. Such a declaration will prevent multiple future actions to determine the rights and obligations of the parties.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, as follows:

1. For response costs and other damages under the Carpenter-Presley-Tanner Hazardous Substance Account Act incurred by Plaintiffs, including prejudgment interest allowed by law against all Defendants;

2. For a judicial declaration under the Carpenter-Presley-Tanner Hazardous Substance Account Act that Defendants are liable for all future response costs and other costs that may be incurred by Plaintiffs in connection with the Dutch Girl Property against all Defendants;

3. For general, consequential and incidental damages, in an amount to be proven at trial, caused by Defendants' continuing private nuisance, continuing public nuisance, continuing trespass, and continuing negligence against all Defendants;

4. For a judicial declaration that Defendants caused the contamination at the Dutch Girl Property and are liable for its total cost of remediation against all Defendants;

5. For a preliminary injunction and a permanent injunction enjoining all Defendants, their agents, servants, and all persons acting under, in concert with, or for the Defendants, from: (a) failing to prevent contamination of the Dutch Girl Property; and (b) failing to remediate the hazardous substances and other contaminants contained on the Dutch Girl Property;

6. For the reasonable amount of attorneys' fees and costs expended in recovering response costs and for the reasonable fees required to retain experts and consultants against all Defendants;

7. For Plaintiffs' expenditure of costs to investigate and monitor the hazardous substances and other contaminants that Defendants have allowed to migrate through the soils and groundwater of the Site and onto the Dutch Girl Property, which will confer a significant benefit on the general public to protect and restore natural resources within the public trust.

8. For Plaintiffs' reasonable attorneys' fees and costs pursuant to Cal. Civ. Proc. Code § 1021.5 on their claims for trespass, private nuisance, public nuisance, and negligence against all Defendants;

9. For punitive damages and exemplary damages on their claims for trespass, private nuisance, public nuisance, and negligence against all Defendants;

10. For such other and further relief which the Court may deem just and proper.

Dated: May 22, 2026

**COTCHETT, PITRE & McCARTHY, LLP**

By: ______________________
JULIE L. FIEBER
BRIAN DANITZ
GARY A. PRAGLIN
*Attorneys for Plaintiffs Dutch Girl Plaza LLC and Steven H. Depper*

## VIII. <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury on all issues so triable.

Dated: May 22, 2026

**COTCHETT, PITRE & McCARTHY, LLP**

By: ______________________
JULIE L. FIEBER
BRIAN DANITZ
GARY A. PRAGLIN
*Attorneys for Plaintiffs Dutch Girl Plaza LLC and Steven H. Depper*